# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ELENA DVOINIK and
BORIS ZAVADOVSKY,

    Plaintiffs,

v.                                   Case No. 8:22-cv-1127-TBP-CPT

DR. PETER PHILIPP, MARIO
RABL, SUSANNE HOFLINGER,
THOMAS HOFLINGER, and DR.
GUNDA EBHART,

    Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS

This matter is before the Court on "Defendants' Motion to Dismiss Amended Complaint for (1) Insufficient Service of Process, (2) Shotgun Pleading, (3) Lack of Subject Matter Jurisdiction, (4) Lack of Personal Jurisdiction, and (5) Failure to State a Cause of Action, and Incorporated Memorandum," filed on October 28, 2022. (Doc. 51). Plaintiffs filed a response in opposition on November 7, 2022. (Doc. 57). Defendants filed a reply on December 7, 2022. (Doc. 62). Based on the motion, response, reply, court file, and record, the Court finds as follows:

## Background

*Introduction*

Plaintiffs' amended complaint alleges a far-reaching scheme of extortion and theft involving the Austrian police, prosecutors, judiciary, and other unspecified

agencies of the Austrian government.  Plaintiffs allege the scheme "used all possible known criminal tactics and RICO acts."  The scheme was carried out "mainly [by] employees of the executive and judicial branches" of the Austrian government, aided by "high ranking officers and judges," but "was mutated many times, [and] new actors and methods in different countries have been engaged in its execution, resulting in the internationalization of the Scheme."  Plaintiffs admit that the events alleged "normally come only out of Hollywood crime films," but assert that these types of criminal activities involving RICO enterprises and corrupt officials are "common [*modus operandi*] in modern Austria."

As detailed below, the alleged scheme began with and arose out of an allegedly illegal search and seizure by Austrian police of items in Plaintiffs' house in Austria pursuant to a warrant issued by an Austrian court.  Plaintiffs acknowledge that they presented their claims regarding the illegal search to the Austrian courts, which rejected them.  However, Plaintiffs allege that "[a] compromised and corrupt Austrian judiciary facilitates and leaves the victims no meaningful forum in which to seek the damages for the expropriation of their assets."

*Plaintiffs' Allegations*[1]

Plaintiffs Boris Zavadovsky and Elena Dvoinik are foreign citizens currently living in Florida.  Zavadovsky fled the Soviet Union in 1981 and worked for years as

---

[1] Plaintiffs' 80-page factual narrative contains over 200 paragraphs, with a mixture of broad conclusions, repetitive and overly detailed factual matters, and legal argument with extensive quotations from various laws.  This Order recounts only the most salient points.

a physician at a United States Army hospital in Germany. At some point, he apparently moved to Austria, and in 2017 married Dvoinik, a lawyer and businesswoman who immigrated to Austria from Russia in 2011. Plaintiffs own a house in Gloggnitz, Austria, and in 2017 began preparations to move to Florida. In 2020-21, Plaintiffs allowed a Russian citizen named Chuprikov to stay in the house. Chuprikov attempted to blackmail Plaintiffs, and when that failed, in June 2021, he falsely told Austrian law enforcement officials that Plaintiffs had engaged in criminal activity and were preparing to leave the country with information "of interest to the Austrian police," including information about United States military personnel.

Unidentified "RICO co-actors" then conducted surveillance of Plaintiffs' house until Plaintiffs left the country. In July 2021, an Austrian court issued a search warrant. The warrant was executed by Defendants Susanne Hoflinger (an Austrian police officer), her husband Thomas Hoflinger (an Austrian police department IT employee), and Mario Rabl (another Austrian police officer), among others.[2] These Defendants conducted a search of Plaintiffs' house, accessed electronic material and accounts, and took possession of valuable tangible and electronic items. Plaintiffs

---

[2] Plaintiffs are not sure whether Chuprikov was a "permanent member of the criminal community to which Defendants belong," and they are more inclined to believe his wrongful denunciation of Plaintiffs was used as an excuse by Defendants to search Plaintiffs' house. Others who participated in the search of Plaintiffs' house but are not named as defendants in the amended complaint include a police photographer, a district inspector, and an Austrian official in the "Criminal police office Modling, Department 'fraud.'"

allege they thereby obtained access to sensitive information pertaining to United States military and government personnel, which they improperly transmitted to the Austrian government to "justify their own crimes against the Plaintiffs," as well as to "various representatives of foreign governments and criminal groups."

Plaintiffs allege that Chuprikov's information was false, that the search warrant was improper, and that Defendants' search and seizure of Plaintiffs' property and accessing of their electronic data exceeded the scope of the warrant. When Plaintiffs protested these actions, Rabl put them in contact with Defendant Peter Philipp, a private criminal defense lawyer. Philipp initially told Plaintiffs he would look into the matter and clear it up, but then, based on his conversation with the authorities, he told Plaintiffs that an investigation would result in Zavadovsky's medical license being suspended, and that complaining about the conduct of the police or filing appeals would be useless and make things worse. He said an agreement could be reached with the prosecutor's office, but such sensitive matters had to be discussed in person and therefore Zavodovsky should come to Vienna "urgently" and "before it's too late." While containing no overt demand for money or property, Plaintiffs allege this conversation reflected "[t]hreats" and "extortion of bribery." Plaintiffs fired Philipp but allege he continued to purport to represent them in dealing with the authorities, while in reality cooperating with the other Defendants as part of a conspiracy. The details of any further participation or role by Philipp are not spelled out.

Plaintiffs allege they provided evidence of the foregoing misconduct to Austrian law enforcement, prosecutors' offices, and the courts, but they obtained no relief. They spoke again to Rabl, who told them that he was too busy and was out of the office and that they should "stop calling and harassing him" and talk to the prosecutor, Ebhart, instead. Plaintiffs complain they were not allowed into Rabl's building on the pretext of an "anti-coronavirus regime." They next contacted Defendant Gunda Ebhart, a government prosecutor, who "vigorously refused to speak to the Plaintiffs in person" and told them she would only deal with the attorney, Philipp. As with Rabl, Plaintiffs complain they were not allowed into the prosecutor's offices.[3]

Plaintiffs allege that Defendants originally intended to use the withholding of their property and threat of further legal action to extort money or property from them in exchange for its return. Plaintiffs admit the "main part" of their property was returned to them in November 2021 but allege that Defendants failed to return an antique coin collection valued at $600,000. At that point, Plaintiffs allege, the scheme changed from extortion to misappropriation of the coin collection, combined with other actions to harm and threaten Plaintiffs to keep them from asserting their legal rights. These tactics included failing to initiate criminal investigations of lower officials' misconduct, falsifying documents placed in official files, ignoring

---

[3] Although Ebhart initially declined even to meet with Plaintiffs in person, Plaintiffs allege that, after they continued complaining about the search and retention of their property, Ebhart filed false criminal charges against them to "lure the plaintiffs, who are in Florida, to Austria for reprisal against them by RICO members."

requests for assistance, conducting investigations of Plaintiffs, presenting "forged evidence," bringing "trumped up charges" against them, spreading false information about them, and threatening to place Plaintiffs on a "wanted list."

Plaintiffs acknowledge their claims regarding the illegal search and seizure were rejected by a judge of the Regional Court Wiener Neustadt, but Plaintiffs allege the judge ignored their specific complaints.[4]  In March 2022, the Higher Regional Court of Vienna upheld the decision of the lower court "on the confiscation of all seized items and documents as lawful . . . ."  Once again, Plaintiffs complain that the court ignored their arguments.

Rebuffed by the courts in Austria, in May 2022, Plaintiffs filed the instant suit initially naming fourteen defendants, most of them Austrian government officials, setting forth 116 paragraphs of factual allegations, and purporting to assert a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*. ("RICO") and the "Ohio Corrupt Practices Act."  The operative amended complaint drops all defendants except the two Hoflingers, Rabl, Ebhart, and Philipp, and asserts eleven counts, including RICO and RICO conspiracy.[5]  Plaintiffs allege that as a result of Defendants' conduct, they have lost the value of

---

[4] Plaintiffs' original complaint named the judge as a defendant, but he was dropped as a defendant in the amended complaint.

[5] As noted below, Plaintiffs have requested that they be allowed to voluntarily dismiss the third through the thirteenth claims for relief.  After moving to dismiss the original complaint, which was mooted by the filing of the amended complaint, Philipp's counsel withdrew from representing him; Philipp proceeded *pro se* and answered the complaint, generally denying the allegations.  His former counsel now represents the moving Defendants.

the coin collection. They also allege the seizure of their property prevented Plaintiffs from accessing or using material such as passports and other documentation required to carry on their personal and business affairs, which resulted in in monetary loss.

Defendants moved to dismiss the amended complaint based on lack of subject matter jurisdiction, insufficiency of service of process, lack of personal jurisdiction, and failure to state a claim.

## **Legal Standard**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v.*

*Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

## Analysis

Defendants' motion to dismiss raises substantial questions regarding the sufficiency of service of process, personal jurisdiction, and whether the complaint states a claim for relief. In the interest of judicial economy, however, the Court will address only Defendant's argument that the case should be dismissed based on the act of state doctrine. Plaintiffs did not respond to this argument. Because the Court finds that the act of state doctrine precludes Plaintiffs' claims, Defendants' other challenges become moot.

Under the act of state doctrine, the courts of this country will not inquire into the validity of public acts of a recognized foreign sovereign power committed within its own territory. *E.g., Mezerhane v. Republica Bolivariana de Venezuela*, 785 F.3d 545, 552 (11th Cir. 2015). "Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory." *Id*. (quoting *Underhill v. Hernandez,* 168 U.S. 250, 252 (1897)). The act of state doctrine has been justified by the need to promote "international comity

[and] respect for the sovereignty of foreign nations on their own territory." *W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 408 (1990). Under current case law, the doctrine is supported primarily by domestic separation of powers concerns – the "'strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder' the conduct of foreign affairs." *Id.* at 404 (quoting *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 423 (1964)).

Plaintiffs' lawsuit is almost exclusively about events that allegedly occurred in Austria. The only substantial connection this case has to the United States is the fact that Plaintiffs reside here. More specifically, the lawsuit concerns the activities of Austrian law enforcement and the Austrian judiciary stemming from a search of Plaintiffs' house in Austria pursuant to a court-issued warrant.[6] The conduct at issue includes obtaining the warrant, conducting a search, seizing evidence, providing information to and requesting information from other governmental agencies and other entities and individuals, threatening Plaintiffs with prosecution, filing criminal charges against Plaintiffs, and responding (or failing to respond) to Plaintiffs' complaints. Although Plaintiffs allege these actions were baseless, illegal, and motivated by personal gain, rather than proper acts on behalf of the

---

[6] While Plaintiffs assert that Thomas Hoflinger was not an investigator but only an IT expert and therefore conclude he was not acting in an official capacity when he entered their house, there is no plausible allegation of fact to support this conclusion. They allege that Hoflinger was a police department employee, and that he accompanied police officers into Plaintiffs' home to access computer data, which is alleged to have been part of the illegal search conducted by the police.

state, on their face these actions are quintessential exercises of a state's police power and are inherently sovereign in nature. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 361 (1993) (stating that "a foreign state's exercise of the power of its police has long been understood for purposes of [sovereign immunity] as peculiarly sovereign in nature"); *Nocula v. UGS Corp.*, 520 F.3d 719, 728 (7th Cir. 2008) ("The decision of a foreign sovereign to exercise its police power through the enforcement of its criminal laws plainly qualifies as an act of state.").[7]

Adjudicating Plaintiffs' claims would therefore require this Court to declare that the alleged acts of Defendants and others described above – ostensibly exercises of the sovereign police power, carried out entirely within Austria, and stemming from a search and seizure affirmed as legal by the Austrian courts – were in fact invalid because they were tortious and illegal under Austrian and/or American law. As such, Plaintiffs' suit is precluded by the act of state doctrine. *See, e.g., Nocula*, 520 F.3d at 728 (holding that lawsuit seeking to hold corporation responsible for loss of computers which had been allegedly wrongfully seized by the Polish authorities in connection with criminal prosecution and had "mysteriously disappeared" necessarily called for "an inquiry into the acts of a foreign sovereign and is barred by the act-of-state doctrine"); *Hourani v. Mirtchev*, 796 F.3d 1, 15 (D.C. Cir. 2015) (holding that the plaintiff's defamation claim could not be decided

---

[7] Plaintiffs have in a separate action also sued the Republic of Austria itself based on the same events, seeking $250,000,000 in damages. *Dvoinik v. Republic of Austria*, No. 8:22-cv-1700-CEH-SPF (M.D. Fla.)

"without a court having to inquire into the legal validity or tortiousness" of statements made on a Kazakh embassy website); *see also W.S. Kirkpatrick*, 493 U.S. at 405 (explaining that the treatment of a sovereign action as "tortious would have required denying [it] legal effect"); *Underhill*, 168 U.S. at 253-54 (holding that the acts of defendant military commander in detaining the plaintiff "were the acts of the government of Venezuela, and as such are not properly the subject of adjudication in the courts of another government").

As noted, Plaintiffs acknowledge that the legality of Defendants' search and seizure of their property has been affirmed by the Austrian courts at multiple levels. They allege, however, that the courts rejected their claims because their appeals were "monitored and blocked" by "high-ranking officers and judges" and that the courts acted "on instructions from the [RICO] enterprise and its interests," circumstances they allege are the "modus operandi" in Austria. Plaintiffs also allege that Austrian officials provided sensitive United States governmental and military information to the Austrian government and to criminal groups, to the injury of the United States. Based on these allegations and the others set forth above, the Court concludes that Plaintiffs' suit implicates the foreign comity concerns and potential for interference with the executive branch's ability to conduct foreign policy that underlie the act of state doctrine.[8] The amended complaint is therefore dismissed.

---

[8] Defendants' motion anticipated Plaintiffs might rely on a statutory exception to the act of state doctrine for claims involving the assertion of a "claim of title or other right to

While the act of state doctrine appears to foreclose Plaintiffs' claims by their very nature, in an abundance of caution, the Court will grant leave to file an amended complaint. The Court notes that Plaintiffs' response to the motion to dismiss requests that Plaintiffs be allowed to drop all but the first two counts and the thirteenth count from the complaint. That request is granted. If Plaintiffs file a second amended complaint, it should include only the counts for RICO, RICO conspiracy, and conversion currently pled as the first, second, and thirteenth claims for relief. [9]

It is therefore

**ORDERED**, **ADJUDGED, and DECREED** that:

1. Defendants' motion to dismiss (Doc. 51) is **GRANTED.**

2. The amended complaint (Doc. 31) is **DISMISSED WITHOUT PREJUDICE**, with leave to amend.

3. Plaintiffs are directed to file a second amended complaint on or before April 14, 2023. Failure to file a second amended complaint as directed

---

property," that is "based on (or traced through) a confiscation" that took place in violation of international law. *See* 22 U.S.C. § 2370(e)(2). This statute does not apply because Plaintiffs do not allege anyone is asserting title or right to property based on a confiscation, and because the exception applies only to property located in the United States. *See, e.g., Glen v. Club Mediterranee S.A.*, 365 F. Supp. 2d 1263, 1268 (S.D. Fla. 2005), *aff'd,* 450 F.3d 1251 (11th Cir. 2006).

[9] Defendant Philipp raised the act of state doctrine in his motion to dismiss the original complaint. Although he has not moved to dismiss the amended complaint, the complaint is dismissed as to Philipp as well. While not a matter of subject matter jurisdiction, the doctrine may be raised *sua sponte. E.g., Hourani*, 796 F.3d at 12 n.6. Moreover, the application of the act of state doctrine turns on the nature of the claims asserted rather than the status of a particular defendant.

will result in dismissal of this action.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 15th day of March, 2023.

_____
**TOM BARBER
UNITED STATES DISTRICT JUDGE**